## BALTIMORE CITY COURT.

Filed December 16, 1904.

IN THE MATTER OF THE WRIT OF HABEAS CORPUS FOR JAMES FLANIGAN.

*William H. Lawrence* for petitioner.
*Albert S. J. Owens* and *Richard F. Kimball* for the State.

BAER, J.—

This is an application for a writ of habeas corpus for James Flanigan, held in the Maryland House of Correction under the following commitment:

State of Maryland, Baltimore County, to Wit: To the Superintendent of the Maryland House of Correction.

Greeting: Whereas James Flanigan, late of the County of Baltimore, was this day duly convicted before the undersigned, a justice of the peace of the State of Maryland, in and for the county aforesaid of Vagrancy, and it was thereby adjudged that the said James Flanigan for the said offence should be imprisoned in the Maryland House of Correction for the space of six months, he having waived the right of trial by jury; this is therefore to command you to receive the said James Flanigan into your custody in the said Maryland House of Correction, there to imprison for the space of six months, and for so doing this shall be your sufficient warrant.

Given under my hand and seal this 16th day of Nov., 1904.

JOHN G. MUELLER, J. P. (Seal)

True copy: Test—

J. J. MOORE, Supt.,

Per J. D. STEARNS, Clk."

This commitment was made under Section 314 of Article 27 of the Code of Public General Laws.

A number of grounds to the sufficiency of the commitment were urged at the hearing.

The crime, of which the commitment says the petitioner was convicted, is "vagrancy," and it is contended that no such crime is set forth in said Section 314. The language of that section is "any vagrant, habitually disorderly person, not insane."

The point made is that these words describe only one crime, that the person must be found to be "a vagrant, habitually disorderly person," and that because there is no disjunctive between the word "vagrant" and the words, "habitually disorderly," the word "vagrant" must be construed to be an adjective, and that the crime thereof consists in being both vagrant and habitually disorderly.

These words standing alone, with nothing to aid in their construction, seem certainly to have this meaning; but the history of the legislation upon the subject, and other words found in Section 314, together with the decision of the Court of Appeals in the Margaret Glenn case, 54 Md., 572, bring us to a different conclusion.

The original Act of Assembly, now codified in Section 314, was 1874, Chapter 233, Section 10. In that section the words were "any vagrant, habitually disorderly person (not insane) or habitual drunkard." This section was repealed and re-enacted by 1878, Chapter 415, the change being that the words "or habitual drunkard" were omitted and commas were substituted for the parentheses around the words "not insane."

It is contended that, under the Act of 1874, the disjunctive, "or," before "habitual drunkard," should be read also after the word "vagrant," and that, being so read, the act provides for three distinct crimes.

On the other hand it is claimed that even under the original act the word vagrant must be construed to be an adjective, and that only two crimes were named, that of being a "vagrant, habitually disorderly person," or "habitual drunkard."

The language seem to us susceptible of both constructions, and when the legislature, by the Act of 1878, struck out the words "or habitual drunkard," and did not insert the disjunctive after the word "vagrant," in the absence of anything else to aid in the construction, this might be taken as showing the legislative intent that the one crime was that of being "a vagrant, habitually disorderly person."

This was the view taken by the Judge-at-Large No. 2 in discharging on November 14, 1904, James Green, held under a similar commitment.

We are all now of opinion that the Act of 1874, named three crimes, and that by the Amendatory Act of 1878, one of these, that of being a "habitual drunkard," was omitted, leaving the other two to stand. The reason for this conclusion are, as follows:

First: In the original Act of 1874, it was provided that, on a second or subsequent commitment of the same person, "for any of the said causes," the punishment might be doubled. If only two offences were intended by that act, the accurate language would have been "for either of said causes," while the words actually used, "for any," are the proper ones if three offenses were intended. When, however, the Amendatory Act of 1878 was passed, and the words, "or habitual drunkard," omitted, if only two offenses had been named in the original act, this omission only left one, and yet this amendatory act continues to

use precisely the same words; "for any of the said causes." As only two offenses possibly remained under the Act of 1878, it would have been more accurate if the act had said "for either of the said causes," but it is plain, from the continued use of the plural word "causes," that the act intended to provide for more than one offense, and if for more than one, the offenses must be, first, being a "vagrant," and secondly, "a habitually disorderly person."

Second: The Margaret Glenn case, in 54 Md., 572, is an authority for the proposition that, in the Act of 1878, two offenses were intended. The commitment, in that case, was under the Act of 1878. On page 592, in the opinion of the court, it is stated that she was convicted of being deemed and of being an habitually disorderly person in this, that she leads a dissolute and disorderly course of life. If only one crime was intended, she should have been convicted of being a "vagrant" as well as "a habitually disorderly" person, yet on page 612, in the winding up of the opinion of the court we find the words, "Inasmuch, therefore, as the warrant of commitment shows a good and valid conviction."

It is true that, in the Glenn case, there is no reference directly to the point here raised, but the case was most carefully considered, and, under the Act of 1880, Chapter 6, Section 3, which gave the Court of Appeals jurisdiction to pass upon the case, that the court had to determine the legal sufficiency of the commitment.

Third: It has been the uniform construction of this act, since its passage, by the courts of criminal jurisdiction throughout the State, that two distinct offenses were provided for in the act that of being "a vagrant," and that of being "a habitually disorderly person," and this, in connection with the two other reasons we have given, bring us to the conclusion that this is the proper construction.

The commitment in this case was for "vagrancy." It is not necessary for us, however, to determine in this case, whether the words, "not insane" apply as well to the words, "a vagrant" as to the words, "habitually disorderly person," or whether, in the absence of any statutory definition of what "a vagrant" is, there can be a conviction for being "a vagrant."

In Bishop on Criminal Law, Section 515, it is said: "It is not clear that the ancient common law of England took notice of mere idleness and vagrancy as criminal; indeed, one case lays it down that a vagrant, as such, is not indictable," referring to 6 Mol., 240.

In the Charter of Baltimore city, in Section 866, it is provided that "every person who wanders about and lodges in outhouses, market places, or other public buildings or places, or in the open air, and has no permanent place of abode, or visible means of maintenance, shall be deemed a vagrant."

There does not seem to be in the Public General Laws any definition of a vagrant, eo nomine, but in Section 275 of Article 27, it is provided that "every person not insane, who wanders about in this State, and lodges in market houses, market places, or in other public buildings, or in barns, outhouses, barracks, sheds, or in the open air, without having any fixed place of residence and without having any lawful occupation in the city, town or county in which he may so wander, and without having any visible means of support, shall be deemed to be a tramp, and to be guilty of a misdemeanor," &c.

It thus appears that the statutory definition of a vagrant in the City Charter is practically synonymous with the statutory definition of a tramp in the General Law.

It is not necessary that we should pass upon these questions in reference to vagrancy, for the reason that the commitment in this case is fatally defective, because it fails to state that the crime of vagrancy, for which the petitioner was committed, assuming that he could lawfully be convicted for such a crime, was committed in Baltimore county, and was therefore within the jurisdiction of the justice of the peace of that county who committed him.

For this reason the petitioner must be discharged from the custody of the House of Correction, and it will be so ordered. For the same reason the discharge of the petitioner, Green, by Judge-at-Large No. 2 on November 14, 1904, was proper.

I am authorized to say that Chief Judge Harlan and Judge Dobler, who sat with me in the case, concur in this opinion.